438 So.2d 1063 (1983)
Samuel I. ADLER, John R. Frankenfield, Charles Donner, Howard Mescon, al Ketchum, J & R Forming Co., and Versatile Construction Systems, Inc., a Florida Corporation, Appellants,
v.
SELIGMAN OF FLORIDA, INC., Fidelity and Deposit Company of Maryland, and J & R Crane Service, et al., Appellees.
No. 81-1897.
District Court of Appeal of Florida, Fourth District.
October 19, 1983.
*1064 Sam Daniels of Daniels & Hicks, Miami, and Marc Cooper of Greene & Cooper, P.A., Miami, for appellants.
Daniel Neal Heller of Heller & Kaplan, Miami, for appellee, Seligman of Florida, Inc.
Joel S. Perwin of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, for amicus curiae.
BERANEK, Judge.
This is an appeal from a final judgment finding a breach of a fiduciary duty and awarding Seligman of Florida, Inc., $615,564.65 *1065 in compensatory damages, $204,401.19 in prejudgment interest, and $1,310,000.00 in punitive damages. These damages were awarded against Samuel Adler, John Frankenfield, Charles Donner, Howard Mescon, Al Ketchum, J & R Forming Company, and Versatile Construction Systems, Inc., who now appeal asserting numerous errors. The action was originally filed as a mechanic's lien foreclosure in 1974 by one of the subcontractors on a condominium construction project. Seligman of Florida, Inc., the builder, counterclaimed asserting conspiracy and breach of fiduciary duty against various individuals and corporate counterdefendants, all of whom had been involved in the project. Damages for defective construction were also sought. A non-jury trial was concluded on April 27, 1976, after which both sides submitted proposed findings of facts and conclusions of law. At some time thereafter, the court advised counsel of its intention to rule in favor of the counter-plaintiff, Seligman of Florida, Inc. This advice apparently occurred at an informal conference. The matter was then taken under advisement. In October, 1979, the counter-defendant made a motion for a new trial stating that the court could not rule on the matter which had then been under advisement for three and one-half years. The motion for new trial asserted that the delay was simply too long. In December, 1979, the court entered an order denying the motion for new trial and therein stated it intended to rule and render a judgment at the first possible moment. More than a year later, after four and one-half years, the trial court issued a final judgment dated January 6, 1981. The last brief was filed before this court on February 4, 1983, and oral argument occurred on May 17, 1983.[1] We reverse in part and remand for further proceedings.
We start by condemning the four and one-half year delay but caution that we do not reverse on this basis. However, in view of this delay, we will dispose of this matter without extended discussion.
The facts as found in the final judgment are briefly as follows. Seligman, president of various real estate development companies, and Adler, also a builder, entered into a joint venture to plan, build, and sell a 531 unit condominium project. Seligman was to provide the land and money and Adler was responsible for the actual construction. Adler involved various corporations and individuals in the project, all of whom conspired to siphon off the profits which should have belonged to Seligman or the joint venture. The devious nature of the conspiracy was far reaching and much of the construction actually performed was defective. Although the joint venture was formally terminated before substantial construction occurred, the conspiracy was conceived during its existence. The project was initially planned using ground level cast-in-place concrete floors over pads and upper level prestressed concrete floors. Adler changed from this initial plan to a flying form system with a flat plate design and did so in bad faith and without consultation with Seligman. The flat plate flying form system was more expensive than the initial plan. The change in plans was done so Versatile could successfully bid the job and siphon off the profits. Adler failed to disclose his own personal ownership interest in Versatile Construction System, Inc., the corporation subcontractor involved in the flying form system. This system of construction was used solely for the benefit of Adler and the others who conspired against Seligman. All of the actions of the various counterdefendants constituted a conspiracy to the detriment of Seligman. Adler breached his fiduciary duty to Seligman.
There are eleven points on appeal.

POINT I.

WHETHER THE $217,000 AWARD FOR INCREASED CONSTRUCTION COST IS BASED ON SUBSTANTIAL COMPETENT EVIDENCE.
The trial court awarded over $217,000 as the increased cost of using the flying *1066 form system as opposed to the less expensive system on which the project was initially designed. We find the evidence as to Seligman's actual costs of construction to have been lacking and thus reverse this award. The Seligman company actually constructed the building after the termination of the joint venture and did so using the flying form system. The evidence presented in support of this element of damage was merely an estimate rather than the actual cost figure. We reverse on the authority of Safe-T-Lawn, Inc. v. Agricultural Engineering Association, 235 So.2d 25 (Fla. 3d DCA 1970).

POINTS II AND III.

WHETHER THE $247,000 AWARD FOR "STEP-DOWN" CONSTRUCTION IN THE INDIVIDUAL UNITS IS PROPER WHEN MOST OF THE UNITS HAD ALREADY BEEN SOLD.

WHETHER THE $59,000 AWARD FOR RECONSTRUCTION OF ALL THE STAIRWELLS IS PROPER WHEN (1) MOST OF THE UNITS HAD BEEN SOLD AND (2) THERE WAS NO PROOF THAT ALL THE STAIRWELLS WERE DEFECTIVE.
The trial court awarded Seligman damages for defendants' failure to build each unit with a "step-down." One hundred thirty units were completed. Seligman owned only 46 of these units, having sold the balance prior to trial. There was no showing that Seligman was actually responsible or would ever be compelled to build "step-downs" in the units previously sold. Further, Seligman was awarded damages for total reconstruction of all 42 stairwells. There was no showing of Seligman's liability to rebuild these stairwells. These damages appear to have been awarded under the theory of breach of a fiduciary duty in that the "step-downs" were part of the initial design but not part of the flat plate flying form design. The damages here were improper because they did not involve actual damages to Seligman, but instead were in the nature of damages for repairs which might occur in the future. On retrial, Seligman shall be entitled to recover future damages only if it can be shown that the repairs will necessarily occur and that Seligman will be responsible for them. Damages, if any, arising from diminution in value may be the subject of amended pleadings and proof on retrial.

POINT IV.

WHETHER THE $14,232.16 AWARD FOR DELAY DAMAGES IS SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE.
No error has been made to appear under this point and said amount is thus affirmed.

POINT V.

WHETHER THE LOWER COURT WAS CORRECT IN HOLDING ALL THE COUNTERDEFENDANTS LIABLE FOR THE COMPENSATORY DAMAGE AWARDS.
The trial court awarded $615,564.65 in compensatory damages and $204,401.19 in prejudgment interest. These awards were jointly and severally against Adler, Versatile, J & R Forming, Frankenfield, Donner, Mescon, and Ketchum. We hold that these damages were improperly assessed against Donner and Mescon. The only evidence concerning Donner was his role as a shareholder in Versatile. There is no evidence that Mescon was involved in any manner. The trial court made no specific conspiracy findings against either Donner or Mescon and the awards of compensatory damages against these defendants are reversed. It is argued that Donner and Mescon were partners in J & R Crane Service but we find no evidentiary basis for this holding. The awards as to the other defendants are dealt with in other portions of this opinion.

POINT VI.

WHETHER THE LOWER COURT ERRED IN AWARDING $204,401.19 AS PREJUDGMENT INTEREST.
We conclude that the court erred in awarding prejudgment interest and said *1067 award is hereby vacated and reversed. Contrary to appellees' contentions the counterclaim sought unliquidated damages and prejudgment interest is not proper under such circumstances. See Bryan & Sons Corp. v. Klefstad, 265 So.2d 382 (Fla. 4th DCA 1972). The grounds for most of the damages were breach of a fiduciary duty and conspiracy. The siphoning off of profits which were due Seligman and the bad faith creation of work to be done by the conspiring individuals and corporations give rise to damages of an unliquidated rather than liquidated nature. If, at a new trial on damages, Seligman can show liquidated damages from a certain date as to any particular aspect of the damages, then prejudgment interest would be appropriate as to these items.

POINT VII.

WHETHER THE LOWER COURT ERRED IN HOLDING SELIGMAN OF FLORIDA COULD RECOVER ATTORNEYS' FEES FROM ALL THE COUNTERDEFENDANTS FOR ALL OF ITS LAWYERS' WORK.
Appellants correctly contend that attorneys' fees are only recoverable against Versatile on Seligman's successful defense of the mechanic's lien foreclosure action. Here, although the trial court has yet to determine the amount of attorneys' fees, the judgment establishes liability for attorneys' fees in favor of Seligman as the prevailing party against all of the counterdefendants. It was error for the trial court to award fees in Seligman's favor for the prosecution of the counterclaim against all of the counterdefendants. This award of attorneys' fees was not on the mechanic's lien action; it was instead for the prosecution of a claim for conspiracy and breach of a fiduciary duty. There is no indication as to why attorneys' fees would be allowable on such claims. The fee award is thus reversed and may be reconsidered on remand.

POINTS VIII, IX, X, AND XI.

WHETHER REVERSAL OF THE COMPENSATORY DAMAGE AWARDS MANDATES REVERSAL OF THE PUNITIVE DAMAGE AWARDS.

WHETHER PUNITIVE DAMAGES MAY BE AWARDED BY A TRIAL JUDGE SITTING NONJURY IN AN ACTION SEEKING EQUITABLE RELIEF.

WHETHER THE LOWER COURT ERRED IN HOLDING THAT SELIGMAN OF FLORIDA, A STRANGER TO THE JOINT VENTURE AGREEMENT BETWEEN SELIGMAN SOUTHEAST AND ADLER, COULD RECOVER PUNITIVE DAMAGES BECAUSE ADLER BREACHED A FIDUCIARY DUTY OWED SELIGMAN SOUTHEAST.

WHETHER THE RECORD SHOWS WRONGS OF SUCH ENORMITY AS TO JUSTIFY PUNITIVE DAMAGE AWARDS TOTALING $1,310,000.
This court has previously reversed and remanded for a new trial as to substantial portions of the compensatory damage awards and the awards of interest and attorneys' fees. The question is thus presented as to whether reversal of substantial aspects of the compensatory damage award also requires reversal of the punitive damage award. We conclude that the punitive damage award should also be reversed and that the matter should be remanded for a new trial. This new trial will be as to the amount of compensatory damages and as to the overall award of punitive damages. We hold that the counterplaintiff has established liability for compensatory damages for conspiracy and breach of a fiduciary duty and that the new trial should relate only to the amount of such damages. As to punitive damages we order a new trial as to both issues of liability and amount. In doing so we recognize that compensatory damages include (1) actual damages and (2) nominal damages, and that either is sufficient to sustain an award of punitive damages. See Lassitter v. International Union *1068 of Operating Engineers, 349 So.2d 622 (Fla. 1976). We find that a new trial on the amount of compensatory damages and liability for punitive damages is necessary for several reasons. The four and one-half year delay in issuing the final judgment and the necessity for a retrial under greatly changed factual circumstances indicate that both the amount of compensatory and liability for punitive damages should be retried by the same fact finder. On remand one judge will determine the amount of both compensatory and punitive damages if they are found to be appropriate. Suit was initially filed in 1974, and at trial, many of the units were yet unsold. What was previously considered as "future damages" will obviously be subject to much different proof in a post-1984 environment when the case will be retried. Also, our rulings on several of the compensatory damages issues will substantially change the facts and evidence to be presented on a retrial.
Although the authorities are not unanimous, the weight of authority is against a remand which would force the fact finder to assess a punitive award even in the face of established liability for compensatory damages. See United Air Lines, Inc. v. Weiner, 286 F.2d 302 (9th Cir.1961); Atlantic Coast Line R.R. Co. v. Bennett, 251 F.2d 934 (4th Cir.1958) and Smyth Sales, Inc. v. Petroleum Heat & Power Co., Inc., 141 F.2d 41 (3d Cir.1944). Although Florida has not directly passed on this precise point it is clear that a litigant has no right to a punitive award even if the evidence would support such an award. In St. Regis Paper Co. v. Watson, 428 So.2d 243 (Fla. 1983) the court discussed the distinctions between compensatory and punitive damages and stated as follows at 247:
In contrast, a plaintiff has no right to punitive damages. Fisher [v. City of Miami, 172 So.2d 455]; Florida East Coast Railroad v. McRoberts, 111 Fla. 278, 149 So. 631 (1933). Punitive damages are awarded to punish the wrongdoer and to deter the commission of similar acts in the future. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981); Wackenhut [Corp. v. Canty, 359 So.2d 430]; Campbell v. Government Employees Insurance Co., 306 So.2d 525 (Fla. 1974). Once the plaintiff has introduced evidence to establish a basis for recovery, the jury, acting on behalf of the public, has the responsibility to determine whether to award punitive damages and, if so, what amount would best serve the public policy of punishment and deterrence. Wackenhut; Wangen [v. Ford Motor Co., 97 Wis.2d 260, 294 N.W.2d 437]; Louisville & Nashville Railroad [v. Street, 164 Ala. 155, 51 So. 306]. As counsel for respondent conceded in oral argument, a jury may decide not to award punitive damages even though the evidence would support such an award, Wackenhut, and the plaintiff would have no recourse unless he could prove fraud or an improperly influenced jury. In such a situation, the plaintiff must accept the jury verdict since it is not appealable.
Under this rationale we conclude it would be inappropriate to remand with a mandatory requirement that punitive damages be assessed.
We find Point IX and X to be lacking in merit and do not address them.
The judgment is affirmed in part, reversed in part and remanded for further proceedings.
DOWNEY and LETTS, JJ., concur.
NOTES
[1] This Court issued an initial opinion on July 27, 1983 which was withdrawn and replaced by the present opinion issued on rehearing.