492 So.2d 730 (1986)
Samuel I. ADLER, John R. Frankenfield, Versatile Construction Systems, Inc., a Florida Corporation, and J & R Forming Company, Inc., a Florida Corporation, Appellants,
v.
SELIGMAN OF FLORIDA, INC., and Fidelity and Deposit Company of Maryland, Charles Donner, Howard Mescon and al Ketchum, Appellees.
No. 85-32.
District Court of Appeal of Florida, Fourth District.
July 23, 1986.
Rehearing Denied September 5, 1986.
Sam Daniels of Daniels & Hicks, and Hugo L. Black, Jr., and Lauri Waldman Ross of Kelly, Black, Black, Byrne & Beasley, P.A., Miami, for appellants.
Julian Clarkson and Michael L. Rosen of Holland & Knight, Tallahassee, and Lisa Heller Green of Heller & Kaplan, Miami, for appellee Seligman of Florida, Inc.
ANSTEAD, Judge.
This is an appeal from a final judgment awarding the appellees compensatory and punitive damages on claims of fraud, *731 breach of fiduciary duty and conspiracy. The judgment was entered after a trial by the court without a jury and subsequent to this court's prior reversal and remand for a new trial on the issues of both compensatory and punitive damages. Adler v. Seligman of Florida, Inc., 438 So.2d 1063 (Fla. 4th DCA 1983). We are compelled to again reverse because we find that the appellants were erroneously denied a jury trial.
Much of the long history of this case can be found in this court's prior opinion so we will give only a brief background. Irving Seligman and Samuel I. Adler entered into a partnership to construct a large condominium housing development. The project was to be financed by Seligman, a Michigan businessman who founded Seligman of Florida, Inc. [Seligman] for that purpose, and constructed by Adler, a Florida general contractor and real estate developer. Seligman purchased the land upon which Adler was to build approximately 600 condominium units in 27 buildings in accord with plans prepared by architect William Clayton. However, allegedly, in an attempt to "skim" profits from the project, Adler conspired with others to switch the construction plans without Seligman's knowledge and thereafter submitted false construction cost estimates. In addition, Adler hired a construction company to do major work on the project without disclosing to Seligman that Adler was secretly a partner in the company, along with appellant, John K. Frankenfield. Adler's alleged misdoings resulted in a substantial loss of profit to Seligman. In addition, Seligman alleged that the construction performed was defective and ultimately resulted in additional losses, including a claim for defective construction made in a lawsuit brought by the condominium unit owners against Seligman which he eventually settled at substantial expense.
The present action commenced when the contractor brought a mechanic's lien foreclosure action against Seligman. Through discovery, Seligman learned of Adler's alleged double-dealing and fraud and filed a counterclaim for compensatory and punitive damages. After a non-jury trial a final judgment was entered in favor of Seligman and against various counterdefendants for compensatory damages in the amount of $615,564.65 and punitive damages in the amount of $1,310,000.00. On appeal, this court approved the trial court's determination of appellants' liability for conspiracy to defraud and breach of fiduciary duty but ordered a new trial on both compensatory and punitive damages. Prior to retrial, and upon counterdefendants' motion, the original trial judge recused himself from retrying the case. Subsequently the chief judge assigned Judge H. Mark Purdy to the case. Purdy denied appellant's motion for a jury trial made after Seligman was permitted to amend his pleadings to include a claim for damages arising from settlement of the unit owners' lawsuit. Subsequently, after a non-jury trial, a judgment was entered for compensatory damages in the amount of $1,642,582.56, together with prejudgment interest in the amount of $236,618.00, totaling $1,879,398.56; and punitive damages in the amount of $4,450,000.00 against Adler and $421,749.65 against Frankenfield.
Initially, we reject appellants' claim of fundamental error in the assignment and retrial of the case by Judge Purdy. After this action was remanded following the first appeal, Adler moved to disqualify the original trial judge, Judge Stephen R. Booher, from rehearing the case because Judge Booher had made negative observations in the final judgment about Adler's credibility as a witness. Judge Booher recused himself from retrying the case and immediately sent a memorandum to the chief judge, with copies to all parties, explaining the reason for his recusal and suggesting that he be replaced by Judge Purdy who presently presided over the administrative division of the court previously presided over by Judge Booher. The memorandum suggested that, in fact, the case would have ordinarily been assigned to Judge Purdy after remand on appeal, but the case was assigned to Judge Booher because it was a retrial of a case heard by Judge Booher originally. The memorandum *732 also outlined various other methods contained in the statutes and court rules by which the chief judge could select a successor judge and concluded by simply asking the chief judge to assign a successor. Judge Purdy was assigned. Thereafter, and until this appeal, no objection was ever raised to the contents of the memorandum or Judge Purdy's assignment. The claim on appeal was raised apparently in response to a discovery by appellants in the record on appeal that upon Judge Booher's recusal the clerk of the court, unknown to the parties, had routinely assigned the case to a third judge. That assignment was superseded by the chief judge's action.
The appellants cite several cases to support their claim of fundamental error, none of which we believe to be on point since they all essentially hold that orders entered by a judge after his recusal from a case are null and void. See generally Rogers v. State, 341 So.2d 196 (Fla. 4th DCA 1977), cert. denied, 348 So.2d 953 (Fla. 1977); Weiss v. Miami National Bank, 320 So.2d 466 (Fla. 4th DCA 1975). Of course, Judge Booher entered no subsequent orders in this cause. We also believe that appellants are estopped from crying foul at this late date, having received a copy of the very letter by which they now claim Judge Booher improperly "handpicked" Judge Purdy as his successor. More importantly, however, we reject the appellants' claim that there was any impropriety in Judge Booher's memorandum. Rule 2.050(b)(4) of the Rules of Judicial Administration provide that if a judge is temporarily absent, disqualified in an action, or is otherwise unable to perform his duties, the chief judge of the court or his designee may assign a proceeding to any other judge or any additional assigned judge of the same court. Judicial interpretation of this rule has held:
The assignment and reassignment of specific court cases between or among the judges of a multijudge court is a matter within the internal government of that court and is directed and controlled by policy adopted by the judges of that court, either directly or by and through their chief judge.
Allen v. Bridge, 427 So.2d 249, 250 (Fla. 4th DCA 1983). See also Kruckenberg v. Powell, 422 So.2d 994 (Fla. 5th DCA 1982). It is clear to this panel that Judge Booher was only doing his duty in reporting his recusal to the chief judge and attempting to be helpful in outlining to the chief the various alternatives available for picking a successor. None of the parties, including appellants, found this action to be objectionable at the time, and, upon review, we find nothing improper in the action.
We have a different view as to appellants' claim of error in the denial of their motion for a jury trial made after appellee was granted leave to file amended pleadings. On remand of this cause after appeal the appellants demanded jury trial primarily on the basis that the amended pleadings filed by appellee asserted new issues in that Seligman now referred to the class action filed by unit owners and settled by Seligman well after the first trial of this case. Because the class action had not yet been filed, no claim was made in the first trial for the amounts paid in settlement or the expenses incurred in defending the action. The appellants argue that it was error to deny the jury trial for two reasons. First, appellants claim the trial judge's action was tainted by the fact that he was appointed to the case at the suggestion of the prior judge who had recused himself. Second, new issues were injected by the amended pleadings on remand and a new demand for jury trial was therefore proper.
We summarily reject the first contention for the same reasons we rejected appellants' claim of fundamental error in the appointment of the successor judge. However, we believe that sufficient "new issues" were injected into the case to revive appellants' right to demand a jury trial. The appellants assert in their brief:
At the time of the remand, Seligman's counterclaim raised the following factual issues: (1) it charged all of the non-Adler defendants solely with a conspiracy to create excessive costs on the Applegreen *733 project; (2) it charged only the entities, Versatile Construction Systems, Inc. and J & R. Forming Company, not the individual defendants, with defective construction on the project; and (3) it sought, as a remedy, a disgorge of all profits by the defendants. Notably, this pleading did not mention any condominium unit owners at Applegreen or seek any form of damages on their behalf. [R. 1528-33].
Seligman's 1984 amendment to this pleading [App. B] significantly changed the compensatory and punitive damages issues in the case by (1) charging all of the individual defendants with a generalized "misconduct"; (2) charging all of the individual defendants with defective construction on the project; (3) raising for the first time Seligman's "legal derivative responsibility to compensate the unit owners and/or condominium association" for the defective construction; and (4) raised for the first time the market value of the premises as a whole. [R. 2068-69]. Seligman's indemnity theory is especially important in that it raised an entirely new cause of action against all of the defendants for indemnity allegedly owed to Seligman for all of the "damages" it incurred in the Infande suit. Since the Infande suit wasn't even filed until six months after the first Adler trial was concluded, there was no way this could be anything but a "new issue."
Finally, this court should take into account the prejudice to defendants engendered by Seligman's counsel's two-faced conduct, in determining that the trial court's denial of a jury trial was an abuse of discretion. Having previously argued with great success that his 1984 Amendment raised nothing "new" entitling defendants to a jury trial [R. 2112; 2114; 2755], Seligman's counsel proceeded to tell the court immediately upon opening that:
[E]vents have occurred subsequent to the close of trial which directly, proximately substantiate and corroborate that the compensatory damages, the exposure to my client was much greater than perhaps anyone realized and that was not known, nor the amount of it known at that time. [R. 3607] (emphasis added.).
His opening statement dealt in detail with the Infande suit and reiterated over and over again that "all of these events happened subsequent to the trial before Judge Booher." [R. 3616; 3618].
With the exception of the rhetoric we are compelled to agree with the gist of this contention.
It has been held that the filing of an amended pleading which injects a "new issue" into the case revives the time for filing a demand for jury trial. Hollywood, Inc. v. City of Hollywood, 321 So.2d 65 (Fla. 1975). No Florida case law explicitly defines a "new issue."[1] However, federal cases interpreting the same rule indicate that the term "new issue" refers to whether the amended pleadings contain new issues of fact, rather than new theories of recovery. Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978).[2] In Bank of Miami v. Greene, 240 So.2d 162 (Fla. 3d DCA 1970), without reciting the facts, the court held that the right to a jury trial was not revived by the filing of an amendment to the complaint that "touched the same general issue of damages which was then before the court." Id. at 162. Principally because the amended counterclaim claimed substantial additional damages based on the subsequent *734 unit owners' suit, we believe the Seligman amendment did inject "new issues" in the action. Although we cannot be certain because of the absence of a factual background to Greene, to the extent that decision may be considered as a broad ruling that an amendment concerning damages may never revive the right to demand a jury trial we acknowledge our disagreement. While we recognize that a claim for defective construction had already been asserted in the earlier pleadings and that the unit owners' action was, of course, substantially predicated upon construction defects, we believe there is a fundamental difference between the claim by Seligman for his own loss in the reduced value of his investment and return on the development as compared to the damages he suffered in defending and settling the unit owners' action. One of the purposes, if not the main purpose, of the rule allowing for another opportunity to seek a jury trial upon the filing of an amendment to the complaint is to give the defendant an opportunity to reassess the claims made against him in order to make a knowledgeable decision to waive a jury trial. As noted previously the owner's suit and its settlement was not alleged in the initial pleadings or considered in the first trial because the suit had not yet even been filed. This suit was the basis for an additional claim of damages by Seligman amounting to hundreds of thousands of dollars including a claim for almost $150,000.00 in attorney's fees expense alone. We cannot ignore the fact that these damages proceeded from events subsequent to the pleading and trial of the initial claim and that, of course, these damages are substantial. Accordingly, we hold that appellants were entitled to seek a jury trial upon the filing of the amended pleadings.
Seligman also asserts that even if new issues were injected into the case the renewed right to request jury trial was waived. He asserts that at the hearing on April 4, 1984, the counterdefendants agreed to set the cause for non-jury trial. The appellants respond that they agreed to a non-jury trial prior to the time Seligman's motion to amend its counterclaim was filed and determined. The record reflects that the order setting trial was based on a hearing held prior to the order granting leave to amend. We cannot conclude that there was a waiver based on the record before us.
Accordingly, although it is apparent that this cause, which has been around for many years, will have to be tried a third time, we are compelled to reverse and remand because we believe the appellants were entitled to a jury trial. We make no comment on the remaining issues which are rendered moot by our ruling.
DOWNEY and DELL, JJ., concur.
NOTES
[1] In Quality Coffee Service, Inc. v. Tallahassee Coca-Cola Bottling Co., 474 So.2d 427 (Fla. 1st DCA 1985), the appellate court determined that an amended counterclaim which added counts in fraud and civil theft was sufficient to revive the time for demand for jury trial. In Magram v. Raffel, 443 So.2d 396 (Fla. 3d DCA 1984), the court ruled that it was error to deny a jury trial where the amended complaint added a count for breach of an agency relationship while the original complaint had been for legal malpractice.
[2] As a general rule we would expect that an amendment to a complaint would be unnecessary unless it did raise a "new issue." Of course, there may be amendments to satisfy technical pleading requirements or for other reasons that do not inject new issues.