790 So.2d 539 (2001)
DR. PHILLIPS, INC., Appellant,
v.
L & W SUPPLY CORPORATION, etc., et al., Appellee.
No. 5D00-3143.
District Court of Appeal of Florida, Fifth District.
July 13, 2001.
*540 Catherine Brown, Orlando, for Appellant.
John R. Hamilton of Foley & Lardner, P.A., Orlando, for Appellee, Seacoast Supply.
Stacy D. Blank and Jack C. McElroy, of Holland & Knight, LLP, Tampa, for Appellee, L.B. Sowell Corporation.
THOMPSON, C.J.
Appellant, Dr. Phillips, Inc. ("Phillips"), timely appeals two final orders granting summary judgment in favor of appellees L & W Supply Corporation, d/b/a Seacoast Supply ("Seacoast") and L.B. Sowell Corporation ("Sowell") and one non-final order which struck the demand for jury trial Phillips had made in its amended complaint.
Phillips filed a four-count complaint against Seacoast, a building supply company, seeking injunctive relief and damages for Seacoast's alleged misuse of an ingress/egress easement along a road named Mercy Star Court on Phillips' property. Phillips later amended the complaint to add Sowell as a defendant. As Sowell's tenant, Seacoast used the easement for access to its business.
*541 Phillips' complaint alleged that Seacoast's building supplies are delivered and picked up in large trucks driven by Seacoast employees, customers and "various invitees." The complaint states that Seacoast's lot can only accommodate two to three trucks at a time for loading and unloading, but often there are many other trucks parked for extended periods on Phillips' surrounding property waiting to enter Seacoast's lot. Phillips alleged that, at the time the complaint was filed, Seacoast permitted and encouraged truck drivers to do the following:
A. Trespass on Plaintiffs properties with semi trucks and other large trucks.
B. Otherwise damage Plaintiff's properties (i) by parking semi-trucks and other large trucks on Plaintiffs properties; (ii) by driving semi-trucks and other large trucks on and off the pavement on Mercy Star Court thereby breaking the pavement; and (iii) in one recent instance, driving so recklessly so as to break a fuel line/tank and discharge fuel onto Plaintiffs properties and attempt to escape liability by simply driving away.
C. Block Plaintiffs and Plaintiffs tenants' access to and egress from Mercy Star Court and otherwise interfere with Plaintiffs use of its properties.
D. Create safety and traffic hazards on Plaintiffs property by blocking visibility and access.
Count I of Phillips' complaint sought a temporary and permanent injunction. Counts II, III, and IV sought money damages under varying theories all tied to the basic factual premise that Seacoast and Sowell had damaged Phillips financially by abuse of the easement.
Phillips moved for a temporary injunction reiterating the allegations contained in the complaint. Evidence presented at the hearing on the motion for temporary injunction corroborated, for the most part, the factual allegations in the complaint. The trial court declined to issue a temporary injunction, reasoning:
[T]here is no emergency situation. There is substantial evidence of a nuisance on that roadway. There is substantial evidence that there is unreasonable use of this easement by the defendant that may ultimately result in the Court having to fashion some sort of injunction so that the use becomes a reasonable use permanently. But I'm not certain of that. There is no clear legal right to this remedy. There is no question in my mind that there is not an adequate remedy at law for a temporary injunction. There is no emergency that I can see, the existence of this situation that goes back several years. And I'm not certain that the injunction may not cause more harm than the harm being complained of by the petitioner at this point.
Phillips timely appealed and this court affirmed without opinion. See Dr. Phillips, Inc. v. L & W Supply Corp., 725 So.2d 1134 (Fla. 5th DCA 1998).
Subsequently, Phillips was allowed to amend its complaint against Seacoast and Sowell. On the same facts, Phillips developed seven, rather than four counts: three of these counts again asked for injunctive relief; three asked for relief in the form of damages; and the last count asked for a declaratory judgment "resolving all doubts about the parties' rights and relations under the Ingress/Egress Easement." Lastly, unlike the original complaint, this complaint sought a trial by jury.
The trial court deemed the right to jury trial waived as it had not been raised in *542 the original complaint and no new issues had been injected by the new complaint. The amended complaint, answer, and various orders arising therefrom were all filed between December 1998 and March 1999. Sowell's August 18, 2000, motion for summary judgment and an affidavit by the president of Sowell supporting the motion, are the next documents in the record. In the affidavit, Sowell's president testifies that the lease between Sowell and Seacoast expired in November 1999 and that Seacoast had vacated the premises. A new tenant had moved into the premises and the lease between Sowell and the new tenant prohibited any standing or parking on the easement by the new tenant or its invitees. No parking signs had been put up along Mercy Star Court, the road had been regraded and repaved, and curbs had been put in place to discourage truckers from parking along the grass. Based on the affidavit, Sowell moved for summary judgment, asserting that the conditions which led to the lawsuit no longer existed or were unlikely to recur and thus no injunctive relief was necessary. As to damages, Sowell argued that as a matter of law Sowell as landlord could not be liable for the conduct of its tenant Seacoast or Seacoast's invitees. Seacoast filed a brief motion for summary judgment in which it adopted the position of Sowell.
Phillips then moved for summary judgment as to the declaratory judgment count. Attached to the motion was the affidavit of an employee of Phillips asserting that a truck was seen parked on Mercy Star Court adjacent to the Sowell property after Seacoast had vacated the property. The driver of the truck was sleeping in the parked truck, and upon waking advised that he was waiting for the new Sowell tenant to open for the day; he refused to move when requested, despite the "no parking" signs. Another affidavit was filed in opposition to appellees' motions, which included photos of the damage to the roadway which sat upon the easement. The photos were not current but rather were taken before Sowell repaired the road.
A brief hearing was held on appellees' motions for summary judgment. Seacoast and Sowell primarily argued that Seacoast, by vacating the Sowell property, had rendered the lawsuit moot. In response, Phillips argued that the dispute was not simply mooted by Seacoast moving its operations:
[U]ntil I have a determination by this Court as to whether they're allowed to park or not park on the property, this matter's not moot. Until I have a determination of what our damages are for not being able to use our road for two years, this matter's not moot. Until I have a determination of what our damages are for the trespassing that occurred and damaged our property, this matter is not moot.
The trial court granted Seacoast and Sowell's motions, final judgment for Sowell was entered, "final summary judgment of dismissal" was entered for Seacoast, and Phillips timely appealed both judgments and the earlier decision to strike the jury trial demand.
The proper standard of review of a summary judgment is de novo. In order to determine the propriety of a summary judgment, this court must resolve whether there is any "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Generally, "[t]he party moving for summary judgment has the burden to prove conclusively the nonexistence of any genuine issue of material fact." We must consider the evidence contained in the record, including any supporting affidavits, in the light most favorable to the non-moving party, *543 the Appellants, and if the slightest doubt exists, the summary judgment must be reversed.
Krol v. City of Orlando, 778 So.2d 490, 491-92 (Fla. 5th DCA 2001).

INJUNCTIVE RELIEF
Phillips concedes that because Seacoast has moved, any demand for injunctive relief against Seacoast is moot. In asking for injunctive relief in its amended complaint, Phillips only alleged misconduct on the part of Seacoast in order to justify the need for injunctive relief. Not one allegation in those counts concerned any conduct of Sowell. Despite the nature of the factual complaints, Phillips prayed for injunctive relief as to Sowell in each of the counts seeking an injunction. Although Phillips acknowledges its demand for an injunction as to Seacoast is moot, Phillips asserts that an injunction is still necessary against Sowell and its assignees and licensees. As Phillips put it, the circumstances necessitating the injunction "didn't go away when Seacoast moved."
The problem for Phillips is that the only conduct alleged in the amended complaint necessitating the entry of an injunction was the conduct of Seacoast. Therefore, when Seacoast moved, the need for an injunction "did go away"at least as couched in the terms of the counts seeking injunctive relief in the amended complaint. See Daniels v. Bryson, 548 So.2d 679, 681 (Fla. 3d DCA 1989); City of Jacksonville v. Wilson, 157 Fla. 838, 844, 27 So.2d 108, 111 (1946).

DAMAGES
The record is replete with evidence that Phillips was damaged by the use of this easement by Seacoast and its invitees' trucks, so much so that Seacoast can do little but suggest that the damage was remedied. There are photographs which demonstrate the physical damage to the easement, and the record contains the testimony of witnesses as to the damage inflicted by the trucks that were there at the behest of Seacoast. The trial court, at the hearing on the motion for temporary injunction, explained that the damage was clearly tied to Seacoast and not just Seacoast's invitees:
What ties them to your clients is the fact that they know what volume of business they can expect and they have cut off two of the three gates and they channel the traffic at such a pace that there has to be a back-up. So it certainly does tie it. If they [the trucks] were all just turning in there, that would be one thing, but they're not. So your client [Seacoast] is causing the condition in a number of ways.
Perhaps Seacoast is correct in asserting that all the damage had been remedied and thus Phillips cannot demonstrate damage beyond what has been remedied by the repaving and regrading of the road, etc. Phillips, however, should be given the opportunity to demonstrate that its damages have not been completely remedied, particularly where Seacoast practically concedes that either it or its invitees caused damage to Phillips. Seacoast's argument that it cannot be held legally responsible for the conduct of its invitees is similarly disposable. The trial court noted, as quoted above, that Seacoast had authority over those invitees. Thus, any damage the invitees' inflicted could be left at the foot of Seacoast. For these reasons, summary judgment on counts seeking recovery of damages from Seacoast must be reversed.
Sowell suggests that the trial court granted summary judgment in its favor as to damages because the trial court concluded, as a matter of law, that Sowell cannot be held liable for the damages incurred *544 by Phillips due to the misconduct of Seacoast or Seacoast's invitees. How Sowell knows this is unclear, as the trial court did not explain its ruling on the record, or explain its ruling in the orders on appeal. Nevertheless, Sowell's argument on appeal remains the same, that Sowell cannot be liable as a matter of law for the complained-of damages, because those damages were all inflicted by Sowell's tenant or the tenant's invitees, and not Sowell itself.
Phillips, on the other hand, argues that Sowell can be liable for the damages because Sowell had a duty to Phillips to not misuse the easement, and Sowell's allegedly allowing its tenant Seacoast to use the easementand misuse itbreached that duty. We agree with Phillips. Allegedly, Seacoast increased the easement well beyond what was reasonably contemplated at the time the easement was created, and Sowell knowingly allowed this conduct to continue. We acknowledge that "the mere ownership of real property does not as a matter of law impose upon the landlord liability for the negligent use thereof by the tenant." See Butler v. Maney, 146 Fla. 33, 200 So. 226, 228-29 (1941); see also Bovis v. 7-Eleven, Inc., 505 So.2d 661, 664 (Fla. 5th DCA 1987). Nevertheless, there is some evidence that Sowell had some form of control over Seacoast or its invitees that could render it liable for any misuse of the easement by those parties.[1]

DECLARATORY RELIEF
Phillips concedes that declaratory relief as to Seacoast is moot because Seacoast has vacated the Sowell property. As to Sowell, however, there is still a dispute as to what constitutes fair use of the easement and what constitutes misuse. Phillips has asked the court in its amended complaint to "resolve all doubts about the parties' rights and relations under the Ingress/Egress easement." Sowell suggests that it has contracted with its new tenant to reflect that the conditions that led to this lawsuit can no longer occur. According to the affidavit submitted by Sowell's President, standing and parking of trucks has been contractually prohibited by way of the lease between Sowell and its new lessee, but trespassing past the boundaries of the easement, or driving beyond the side of the road, has not been contractually prohibited.
A court will not issue a declaratory judgment that is in essence an advisory opinion based on hypothetical facts that may arise in the future. See Santa Rosa County v. Administration Commission, Division of Administrative Hearings, 661 So.2d 1190, 1193 (Fla.1995.) The facts here, though, are anything but hypothetical and this long-running dispute would be best put to rest by a court declaration informing Phillips and Sowell exactly what the scope of this easement is as a matter of law.

DEMAND FOR JURY TRIAL
Florida Rule of Civil Procedure 1.430 allows a party to demand a trial by jury of any issue triable of right by a jury by serving upon the other party a demand in writing no more than 10 days after the service of the last pleading directed to that issue. Therefore, Phillips initially waived the right to jury trial by not demanding one at the outset of this case. That being said, the late-filed jury trial demand in the *545 instant case requires that two specific questions be answered.
First, since the jury trial demand was filed with the amended complaint, the trial court should have looked to determine whether that amended pleading injected a "new issue" into the case; if it did, then the time to demand a jury trial was revived and the jury trial demand should have been granted. See Adler v. Seligman of Florida, Inc., 492 So.2d 730 (Fla. 4th DCA 1986)("[i]t has been held that the filing of an amended pleading which injects a "new issue" into the case revives the time for filing a demand for jury trial"). Second, presuming no new issue was injected, the trial court had to consider whether Phillips had demonstrated that a jury trial would neither impose an injustice upon Seacoast and Sowell nor be an unreasonable inconvenience upon the court in the performance of its duties. See Herrera v. Wee Care of Flagler County, Inc., 615 So.2d 223, 224 (Fla. 5th DCA 1993)("[w]hen a party has a change of heart at such a late date, it is incumbent on that party to demonstrate not only the desire for a jury trial but also that such procedure would impose neither an injustice upon the adversary nor an unreasonable inconvenience upon the court in the performance of its duties")(citing Altamonte Hitch & Trailer Service, Inc. v. U-Haul Company of Eastern Florida, 468 So.2d 492 (Fla. 5th DCA 1985)).[2]
"Whether there is a "new issue" depends on whether the amended pleadings contain new issues of fact, rather than new theories of recovery." Adler, 492 So.2d at 733 (citing Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978)). The Adler court noted that in Bank of Miami v. Greene, 240 So.2d 162 (Fla. 3d DCA 1970), it was held that "the right to a jury trial was not revived by the filing of an amendment to the complaint that `touched the same general issue of damages which was then before the court.'" Adler, 492 So.2d at 733 (citing Bank of Miami, 240 at 162). This is not a case, as in Adler, where the passage of time between the original complaint and the amended complaint had allowed for an entirely new but related factual dispute to arise between the parties, necessitating an amended complaint which allowed the time to demand a jury trial to arise again. Here, Phillips has presented the trial court with the same basic complaint, dressed-up with more counts. For this reason, the time for demanding a jury trial was not revived by the filing of this amended complaint.
Thus, we turn to the second question: whether Phillips demonstrated that a jury trial would impose neither an injustice upon Seacoast and Sowell nor an unreasonable inconvenience upon the trial court. Phillips submitted only one reason to the trial court to demonstrate why it would not be unjust or inconvenient to schedule the case for jury trial: that no date for a nonjury trial had been set at that point. Since that was the only reason advanced to show that allowing a jury trial would be neither an injustice or an inconvenience, we cannot say that the trial court abused its discretion in denying the request. Cf. Altamonte Hitch & Trailer Service, Inc., 468 So.2d at 493.
Summary judgment as to any claim for injunctive relief was not erroneous. Summary judgment as to damages, however, was erroneous. Summary judgment on the declaratory judgment count was correct as to Seacoast, but incorrect as to *546 Sowell. Lastly, the trial court did not abuse its discretion in denying the earlier-waived demand for jury trial.
AFFIRMED in part; REVERSED in part; REMANDED.
SHARP, W., and PLEUS, JJ., concur.
NOTES
[1] We note that Seacoast and Sowell worked together on discovery matters in this litigation, claiming a commonality of interest privilege as to some of their clients' records; this is at least some evidence that Seacoast and Sowell should not be considered separate as to determining responsibility for these damages.
[2] In reviewing the trial court's decision on these questions, this Court should look to determine whether the trial court abused its "exceedingly broad" discretion. See Hollywood, Inc., 321 So.2d at 72; Herrera, 615 So.2d at 224.